UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LINDA CHRISTINE RODRIGUEZ, | Case No. 20-13372 |
| Plaintiff, | Matthew F. Leitman<br>United States District Judge |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 11)**

Plaintiff Linda Rodriguez brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 11), Plaintiff's reply (ECF No. 12) and the administrative record (ECF No. 8).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 11), and **AFFIRM** the Commissioner's decision.

I.  **DISCUSSION**

    A.  **Background and Administrative History**

Plaintiff alleges her disability began on May 1, 2015, at the age of 60. On August 30, 2018, she applied for disability insurance benefits. (ECF No. 8, PageID.51). She meets the insured status requirements through March 31, 2020. (*Id.* at PageID.53). In her disability report, she listed impairments which diminished her ability to work. The ailments included: diabetes, hyperlipidemia, dyslipidemia, obesity, erythema, osteoarthritis, mixed hyperlipidemia, fungal dermatitis, bone spurs, palpitations, rheumatoid arthritis, emotional disorder, and depression. (*Id.* at PageID.202). Her application was denied on March 19, 2019. (*Id.* at PageID.51).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On March 11, 2020, ALJ Martha M. Gasparovich held a hearing, at which Plaintiff and a vocational expert ("VE"), Michele D. Robb, testified. (*Id.* at PageID.69-95). On April 1, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff later submitted a request for review of the hearing decision. On November 17, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.35). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 23, 2020.

**B.     Plaintiff's Medical History**

Plaintiff's arguments relate to her hearing loss, anxiety, mental impairments, and past relevant work. Factual development of these issues is address below where necessary.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. (ECF No. 8, PageID.53). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis in both knees, and obesity. (*Id.* at PageID.53-56). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.56-57). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except she can stand and walk for four hours in an eight-hour workday; sit six hours in an eight-hour workday; and lift 20 pounds occasionally and 10 pounds frequently. She can occasionally bend,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

        squat, kneel, stoop, crawl, balance, crouch, and climb.
        She should never climb ladders, ropes, or scaffolds.

(*Id.* at PageID.57-59). At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as a benefits representative as it is generally performed. (*Id.* at PageID.59-60). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 1, 2015, through the date of the decision.

    **D.**    **Framework for Disability Determinations**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

4

the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

    E.    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.  Analysis**

Plaintiff made three arguments in this appeal: (1) that the ALJ's step four finding that she could return to past relevant work as it is generally performed is not supported by substantial evidence, (2) that the ALJ failed to consider Plaintiff's

hearing loss and anxiety in the RFC assessment, and (3) that the ALJ erred in finding that consultative non-examining psychologist, Natalie Rea-Michalak's opinion is less persuasive. The Commissioner contends that Plaintiff's arguments are about the RFC, not an error at step four, and that the RFC is supported by substantial evidence.

The undersigned will address Plaintiff's arguments in an order different from that presented because whether the ALJ erred at step four depends first on whether the RFC is supported by substantial evidence, and thus whether Plaintiff's other two arguments have merit.

1. Consideration of Hearing Loss and Anxiety

Plaintiff argues that the ALJ did not consider all of her non-severe impairments in the RFC assessment, specifically that her hearing loss and anxiety were not properly considered. (ECF No. 10, PageID.579-82).

a. Hearing Loss

Plaintiff points to notations in the record concerning her hearing loss: the Social Security agency employee who accepted her application indicated that she had trouble hearing and that questions had to be repeated throughout the interview, that she reported hearing loss to that employee, (*see* ECF No. 8, PageID.199), that an audiogram test in 2018 revealed bilateral sensorineural hearing loss (*id.* at PageID.393), and she reported hearing loss in her Adult Function Report (*id.* at

PageID.236). (ECF No. 10, PageID.579-80). Plaintiff admits "the record is otherwise silent as to [her] hearing loss," but insists further development of the problem at the administrative hearing was merited because hearing loss would impact her ability to perform past relevant work.

The ALJ did not mention hearing loss in the decision. For this reason, the undersigned considers the ALJ treated the impairment as one that is not medically determinable. At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically determinable physical impairment. To be medically determinable, the impairment must result from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Such impairments "must be established by objective medical evidence from an acceptable medical source." *Id.* The ALJ will not use the claimant's statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment. *Id.* "[W]hen 'an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.'" *Tammy B. v. Comm'r of Soc. Sec.*, 2022 WL 2167546, at *5 (S.D. Ohio June 16, 2022) (quoting *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017)); 20 C.F.R. § 404.1545(a)(2) (stating that the ALJ will consider medically determinable impairments in crafting the RFC).

8

Plaintiff has not met her burden of establishing that her hearing loss is a medically determinable impairment. To begin, she did not allege hearing loss as one of her impairments that affects her ability to work. For this reason, it is no surprise that the ALJ did not address hearing loss in the disability benefits decision. Plaintiff has a diagnosis of sensorineural hearing loss, but under the regulations the diagnosis of hearing loss, alone, cannot establish a medically determinable impairment. Similarly, her subjective statements related to hearing problems are insufficient as well. Finally, the Agency's intake employee's notation that Plaintiff had difficulty hearing during her interview is also insufficient because that notation does not describe an abnormality shown by clinical or laboratory diagnostic techniques.

The medical evidence related to her hearing loss does not support functional limitations. On the day she was diagnosed with sensorineural hearing loss, she had normal audiometry testing. Her speech reception was normal. The doctor determined she had impacted earwax that, after removed, provided "immediate improvement" in symptoms in the ear. (ECF No. 8, PageID.392-93). There are no other records discussing hearing impairment. A diagnosis alone does not establish functional limitations. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). As the Commissioner notes, where

9

Plaintiff's ability to hear was noted elsewhere in the record, it was her denial of any difficulty hearing. (*Id.* at PageID.347, 381, 526).

Because Plaintiff did not prove her hearing loss was a medically determinable impairment, the undersigned finds no error in the ALJ's failure to address hearing loss at the administrative hearing[3] or in the RFC.

### b. Anxiety

The ALJ considered Plaintiff's anxiety to be a medically determinable but non-severe impairment at step two. (ECF No. 8, PageID.53-55). Relatedly, the ALJ found that Plaintiff would have mild impairment in her ability to concentrate, persist, or maintain pace. Despite finding this mild limitation, which Plaintiff appears to connect to her anxiety, the ALJ included no mild limitations in concentrating, persisting, or maintaining pace in the RFC or the hypothetical question to the vocational expert at step four. Plaintiff contends this was error. The ALJ did not question the VE about whether her past relevant work would be impacted with mild limitations in this area and did not develop the mental demands of Plaintiff's past relevant work. (ECF No. 10, PageID.582). The Commissioner cites *Shamsud-Din v. Comm'r of Soc. Sec.*, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), in which the Court found that the lack of reference to mild

---

[3] Plaintiff's counsel was presumably free to explore hearing loss at the hearing, but declined to do so.

psychological limitation in the RFC did not constitute error. (ECF No. 11, PageID.598). *Shamsud-Din* in turn cites several cases from this Court with that holding. This holding was repeated more recently, again with a slew of citations to cases holding the same. *See Avers v. Kijakazi*, 2021 WL 4291228, at *11 (N.D. Ohio Sept. 21, 2021) (collecting cases). As a result, the ALJ's failure to include any limitations in the RFC to account for a mild psychological impairment is not, without more, error.

As in *Avers*, "[a]lthough it is possible that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment *may* constitute reversible error where the ALJ's RFC analysis is completely devoid of any discussion concerning a claimant's mental impairments, that is not what transpired herein." *Id.* The ALJ here discussed Plaintiff's anxiety and her ability to function in the broad areas of psychological functioning. Then, in the RFC discussion, the ALJ assessed the opinion evidence on Plaintiff's mental functioning and anxiety, which is addressed below. (ECF No. 8, PageID.58-59). So the ALJ's decision is not completely devoid of discussion or consideration of Plaintiff's mental impairments. Since the ALJ was not required to further develop mild limitation or include a functional limitation in the RFC to account for mild limitation, the ALJ was not required to include such limitation in the hypothetical question to the VE. Moreover, as the Commissioner points out, Plaintiff did not

11

explain and establish what additional limitations should have been included in the RFC and the hypothetical to the VE to account for mild impairment in concentration, persistence, and pace.

        2.        Treatment of Consultative Medical Opinions

State agency non-examining psychologist Dr. Rea-Michalak reviewed the available medical evidence up to January 23, 2019, including State agency examining psychologist Dr. Cho's January 19, 2019, opinion. (ECF No. 8, PageID.98-100, 104-05). She concluded that Plaintiff had mild limitation in understanding, remembering, or applying information and adapting or managing herself; no limitation in interacting with others; and *moderate* limitation in concentrating, persisting, and maintaining pace. (*Id.* at PageID.106). Dr. Rea-Michalak provided additional explanation. She noted that Plaintiff reported no problems with personal care, she prepares simple meals, does light chores, goes out alone, manages finances, and socializes. Plaintiff reported difficulties with memory, completing tasks, concentration, and following instructions. Dr. Rea-Michalak then reviewed Dr. Cho's assessment of Plaintiff's mental functioning, including that Plaintiff managed to repeat six numbers forward and four numbers background, and recall all three objects after three minutes. (*Id.*). She concluded Plaintiff had the ability to perform simple work activities. (*Id.* at PageID.111).

The ALJ found Dr. Rea-Michalak's opinion "less persuasive" for these reasons:

> [T]he record reveals mild limitation in concentrating, persisting, or maintaining pace and no limitation in adapting or managing oneself except for her subjective report. This is further supported by the consultative mental status exam during which she denied any inpatient or outpatient psychiatric treatment, and she was able to repeat six out of six numbers forward and four numbers backward, and able to remember all three objects given to her three minutes earlier; provide accurate information; and do calculations correctly; and was able to drive, shop, go out alone, manage her finances, and socialize.

(*Id.* at PageID.59) (internal citations omitted).

Plaintiff insists the first reason is "meaningless" because it is simply a reiteration of the RFC finding. (ECF No. 10, PageID.583-84). The undersigned disagrees. The ALJ's statement that the record shows only mild limitations in concentration and no limitation in adaptation, except for Plaintiff's subjective statements, is accurate.

There is no medical evidence suggesting Plaintiff struggles in adapting or managing herself. She presented to medical providers well-groomed or well-appearing. (*See, e.g.*, ECF No. 8, PageID.391, 485). Dr. Cho, who met with Plaintiff, concluded that she had no limitations in this area. Dr. Cho remarked that Plaintiff arrived on time for their appointment, alone, and drove herself. The ALJ cited Plaintiff's activities as inconsistent with Dr. Rea-Michalak's opinion. The

13

activities she reported to Dr. Cho included cooking breakfast, working out, and grocery shopping. She did not report difficulty managing herself or adapting to new places or changes. (*Id.* at PageID.483-87). In her function report are that she drives, manages her finances, and socializes. (*Id.* at PagedID.235). The ALJ's conclusion that there is no medical evidence of limitation in adapting or managing oneself is correct.

Likewise, the evidence supports the ALJ's conclusion related to Plaintiff's ability to concentrate, persist, and maintain pace. During her examination with Dr. Cho, Plaintiff was given tests to determine her ability to remember, concentrate, and do calculations. She could complete serial 7's, she repeated six numbers forward and four numbers backward,[4] and she managed to recall all three objects three minutes after they were told to her. (*Id.* at PageID.485-86). Dr. Cho concluded that Plaintiff is "able to function all right with everyday life activities." (*Id.* at PageID.486). Plaintiff contends that, while these are Dr. Cho's findings on mental status examination, the ALJ wrongfully ignored Dr. Cho's observations that reflect mental limitations. Dr. Cho noted that she was anxious and talkative during the appointment, and Plaintiff's answers were delayed and her speech was described as staccato quality. (*Id.* at PageID.485). Plaintiff suggests the mental status findings are not the full picture of Plaintiff's functioning—Dr. Cho found

---

[4] The undersigned notes that this test is usually performed with six numbers.

14

other issues that the ALJ did not address. (ECF No. 10, PageID.584). Notably, that the Dr. Cho thought Plaintiff's anxiety at the appointment was confined to her concern over her physical health. (ECF No. 8, PageID.486).

First, the fact that the ALJ did not delve into Dr. Cho's observations is not cause for remand. The ALJ need not discuss every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). Second, the ALJ did not selectively draw from Dr. Cho's opinion to discount Dr. Rea-Michalak's. The objective mental status test results revealed that Plaintiff is not very limited in concentration, and the opinion overall does not suggest (indeed, there is no notation) that Plaintiff failed to maintain concentration and answer questions throughout the appointment. Dr. Cho's opinion is at odds with Dr. Rea-Michalak's conclusion that Plaintiff is moderately limited in the ability to concentrate or maintain pace.[5] Thus, the undersigned suggests that the ALJ's reliance, in part, on Dr. Cho's opinion to find Dr. Rea-Michalak's is supported by substantial evidence.

---

[5] While Plaintiff insists Dr. Cho's findings are consistent with Dr. Rea-Michalak's opinion, (ECF No. 12, PageID.609), Plaintiff did not explain how or why they are consistent. For example, she does not explain how being anxious at the appointment aligns with a finding that she is moderately impaired in concentration, persistence, or pace.

15

Finally, Plaintiff argues that the ALJ mischaracterized her activities because the ALJ did not discuss Plaintiff's reported problems with memory and concentration in her function report. (ECF No. 10, PageID.585). Specifically, she also reported she could pay attention for a "short time," she no longer wants to go out because of her knee issues, and she can only follow short written instructions like a recipe or paperwork. (ECF No. 8, PageID.236). The undersigned sees no error in the ALJ's list of activities that require the ability to concentrate or maintain focus, such as driving, shopping, or going out alone, to demonstrate Plaintiff is not as limited in this area as suggested by Dr. Rea-Michalak. The Commissioner's view of the ALJ's decision is reasonable: the ALJ referred to them as examples of things Plaintiff said she can do that require concentration. Plaintiff's suggestion that the ALJ cherry-picked from her function report to support the decision is not well-taken.[6]

### 3. Step Four Determination

The recommended conclusions above result in finding that the RFC need not contain any limitations to account for mental or hearing impairments. Plaintiff argues the error at step four occurred when the ALJ neglected to "inquire as to any of the mental demands of Rodriguez's past work" before concluding she could

---

[6] The ALJ also found Plaintiff's subjective statements, such as that she can focus for only a short time, "not entirely consistent" with the medical evidence; Plaintiff does not challenge that finding.

16

return to past relevant work as that work is generally performed. (ECF No. 10, PageID.577). Since the RFC need not contain such limitations, neither does the hypothetical question to the VE at step four. Plaintiff appears to concede this, since in her reply brief she argues that if the Court agrees the RFC *should have included* mental limitations, then the ALJ also erred by failing to inquire into the mental demands of Plaintiff's past work. (ECF No. 12, PageID.609-10). The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work.

One way in which an ALJ can find a claimant disabled at step four is to find she is capable of performing the functional demands of the job as generally performed. Social Security Ruling 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). The ALJ can rely on the Dictionary of Occupational Titles job descriptions to define the job as it is usually performed. *Id.* Under Social Security Ruling 82-62, 2014 WL 1922790, at *4 (Jan. 1, 1982), the ALJ's decision at step four must contain the following findings of fact: (1) the individual's RFC, (2) the physical and mental demands of the past job, and (3) that the individual's RFC would permit a return to her past job.

The ALJ complied with these requirements. The RFC is addressed above. As to the latter two requirements, the ALJ consulted a vocational expert to determine whether a person with Plaintiff's characteristics and RFC could return to

17

past relevant work. The ALJ also asked the VE whether her testimony was consistent with the Dictionary of Occupational Titles. The VE concluded that such a person could perform the past relevant work as it is generally performed, and that her testimony was consistent with the Dictionary of Occupational Titles. (ECF No. 8, PageID.91, 93); *Turner v. Comm'r of Soc. Sec.*, 2019 WL 5781608, at *5 (S.D. Ohio Nov. 5, 2019), *report and recommendation adopted*, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020) ("[W]here an ALJ inquires whether the VE's testimony is consistent with the DOT and is given an affirmative response, the ALJ has met his or her obligation under SSR 00–4p, and there is no error relying on the positions the VE offered."); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question but only if the question accurately portrays [the claimant's] individual physical and mental impairments.") (citations omitted) (internal quotations omitted). The undersigned thus concludes that the step four decision is supported by substantial evidence.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 11), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

19

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2022        <u>s/Curtis Ivy, Jr.</u>
                             Curtis Ivy, Jr.
                             United States Magistrate Judge